
**PPMT Capital Advisors Ltd**

August 7, 2018

Mr. Andrew A. Wiederhorn
FAT Brands Inc.
9720 Wilshire Blvd
Beverly Hills, CA 90212

RE: Letter of Intent to provide $60M in securitized finance

## Binding Letter of Intent

Dear Mr. Wiederhorn:

This binding letter of intent ("Letter of Intent") sets forth the understanding of the parties with respect to a potential transaction (the "Transaction") in which Royal Gulf Capital Corporation., directly, or through an affiliate or third-party designee ("RGC", "PPMT")) would invest up to $60,000,000 (USD) for the benefit of FAT Brands Licensing LLC, and ultimately Fat Brands Inc.. ("FBL", "Company"), for purposes of acquisition of additional brands and repayment of debt. RGC, FBL, and Company are herein also defined as "Party" or "Parties" to the Transaction.

The parties understand and agree that the provisions of this Letter of Intent are not intended to constitute, nor will they be construed as an offer subject to acceptance and other than the provision of exclusivity, will not become legally binding on the parties unless and until the execution and delivery by the parties of, and then only to the extent reflected in, mutually acceptable Definitive Agreements, as hereinafter defined.

This Letter of Intent will remain valid and executable through Friday August 10, 2018 at 5:00 pm, after which if it is not executed by FAT and RGC, this document is no longer valid. This Letter of Intent, if executed by both Parties, shall terminate and be null and void on August 31, 2018, unless on or before 5:00 o'clock p.m. EST on August 31, 2018, (i) PPMT notifies FBL that it wishes to complete the Transaction. If PPMT notifies FBL prior to the above date and time that it wishes to complete the Transaction, then and in that event, the parties shall complete the Definitive Agreements and the Transaction shall be closed on or before 5:00 o'clock p.m. EST on September 30, 2018 (the "Closing Date" "Exclusivity Period") unless extended by mutual agreement.

If the Transaction is not completed on or before September 30, 2018, (unless extended by mutual agreement) this Letter of Intent shall terminate and be null and void. During the Exclusivity Period, FBL shall have the right to entertain offers and/or negotiate with third parties for the financing. If any offer of financing is made from third parties, RGC shall have the right of first refusal on the terms of the offer.

1

**I.   The Transaction.**

The transaction will be structured as a securitization as follows:

- Fat Brands Licensing, LLC will be a newly formed brand management company. The company will acquire an irrevecobale license to use 100% of the copyrights, trademarks, franchise contracts, license rights and other intellectual property of Fat Brands Inc. for $44M.
- Fat Brands Licensing, LLC will also fund $16M for additional acquisitions. Acquisition funds will be maintained in a FBL escrow account, the interest rate on such funds will be charged at 5% by RGC until invested. Funds will be drawable to facilitate acquisition of new brands organized by FAT, and approved by the board of directors of FAT. Acquired brands will be added to the MLA.
- Fat Brands Licensing, LLC will be owned by a bankruptcy remote entity formed as a Delaware Grantor Trust. Fat Brands Licensing will have minimal operations, and derive its revenue from royalty payments made under a Master License Agreement with Fat Brands Inc., a restaurant franchisor.
- Under the terms of the Master License Agreement ("MLA"), Fat Brands, Inc. will pay annual license fees of $6.0M for a period of five and one-half years.
- The term of the transaction is 66 months. On termination of the MLA, FAT is obligated to pay $60,000,000 + $1.2m per year from the Closing Date to repurchase the assets from FBL.
- All cash flow of Fat Brands Inc. flow through a third party cash flow waterfall managed by a third party trustee. FAT will begin to escrow <u>a minimum of</u> 50 % of its excess cash flow starting in month 36, to purchase the stock of FBL in month 66, thereby returning the IP to FAT. In the event the loan to FAT is in default, including but not limited to failure to meet DSCR of under 1.2X, FBL will intruct the trustee to sweep all excess cash flow. Or as required to prevent default.

Subject to the negotiation, execution and delivery by the parties of one or more agreements similar in nature to market rate customary structure and provisions such as those used by Wendy's, IHOP, and Carl's Jnr./Hardees in recent securitizations. Further such Agreements and conveyance instruments (collectively the "Definitive Agreements") having covenants and conditions mutually agreed to by the parties and appropriate to transactions of the type contemplated herein, the parties intend the principal terms and conditions of the Transaction would include, without limitation, the following:

All phases as outlined herein are jointly and severally subject to satisfactory due diligence as determined by RGC, at its sole discretion, as well as subject to the Company maintaining operations which meet the financial performance requirements and covenants as outlined by RGC.

## Summary of Terms

Securitization of Franchise Royalty Income

- Principal: $44,000,000 plus $16,000,000 Acquisition Line.
- Interest:
    - 10.0% per annum paid monthly in arrears, interest only.
    - 0.50% per annum Collateral maintenance fee.

    - 2.0% One-time Structuring Fee.
- Maker: Fat Brands Licensing, LLC
- Lender: Royal Gulf Capital Corporation
- Servicer: PPMT Capital Advisors, Ltd.
- Contract Term: 66 Months. At the end of the term, FAT is obligated to purchase the IP from FBL for $66,000,000.
- Early Termination: 2 year make-whole pro-rata up to first 24 months (i.e. 18 months if paid off in month 6).
- Collateral:
    - All franchise royalty cash flow from current and future franchise agreements.
    - All copyrights, trademarks, franchise contracts and intellectual property currently owned by FAT via a license agreement to FBL from FAT.
- Guarantor: FAT Brands Inc., as counterparty to the Master License Agreement (MLA).
- Controls
    - Lockbox
    - Cash flow waterfall with FBL prioritized after trust administrator fees.
    - Standard affirmative/negative covenants, typical of securitized finance structures.
    - Predetermined Back up manager rights in the event of any default in FBL or FAT.

$6,000,000 per annum minimum royalty received on Master License Agreement with Fat Brands, Inc. is equivalent of 10%

3

Transaction Process Flow & Structure:



Addditional Terms:

Reporting:

- A) Weekly
    a. Staff changes
    b. Actual vs. projected P&L

- B) Monthly
    a. A monthly operating budget for purposes of lockbox account draws.
    b. Actual vs. projected P&L
    c. Updated Income Statement, Cash Flow, Balance Sheet
    d. As required

Accounting:

Standard Nasdaq listed company financial reporting

Governance:
- A) FBL to have a board consistent with FAT, subject to a bankruptcy remote unanimous consent requirement, providing one board seat to RGC for such protection.

- B) RGC will have unfettered access to senior management as required.

- C) RGC will have the ability to add back-up managers if transaction remains in default or out of convenant for more than 180 days.

4

Covenants
- A) Affirmative Covenants
    a. FAT will comply with all required reporting
    b. After 12 months, FBL will maintain TTM debt to EBITDA ratio no more than 4:1. Debt Service Coverage will be no less that 1.2X.

- B) Negative Covenants
    a. FBL will not make any payments that have not been documented in the monthly operating budget, and that has not been approved by RGC.
    b. FBL will not engage in any material transaction without the approval of RGC.

## II. Equity Purchase Option

As an additional consideration, and to incentivize RGC to invest in the securitization, RGC will be granted the following warrants:

- A) 500,000 warrants with expiration of five years priced at the 30 day average shared price during the period 30 days prior to the closing date, no less than $8/share.

The parties each understand that this Letter of Intent constitutes a firm proposal. The parties shall be bound to a standstill but will not incur obligations with respect to the Transaction until the Definitive Agreements have been negotiated, executed and approved as expressly provided herein.

FAT will fund an expense deposit of $100,000 to fund completion of legal due diligence, prepare closing documents and establish the Grantor Trust. Any unused portion of the deposit will be refunded at closing. This agreement will become effective on execution and funding of the deposit.

Funds should be wired to:

PPMT Capital Advisors, Ltd.
1001 Avenue of Americas, 2nd FL NEW YORK, NY 10017
Bank: REDACTED
Acct
ABA#

5

The parties, by their signatures below, acknowledge having read this agreement and agree to be bound by their terms and conditions.

The Company and RGC hereby agree to the terms of this Term Sheet this 7 day of August 2018:

Fat Brands Inc.

By: _____
Name: Andrew A. Wiederhorn
Title: President & Chief Executive Officer

PPMT Capital Advisors, Ltd., on behalf of one or more ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽ funds or acco⎽⎽⎽

By: _____
Name: ____Karl Douglas
Title: ____Chief Investment Officer

6